**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Craig Randolph PEARSON,**
**Defendant–Appellant.**

**No. 89–50117.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1989.

Decided April 6, 1990.

As Amended Aug. 13, 1990.

John Lanahan, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., and Judith Feigin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, BOOCHEVER and KOZINSKI, Circuit Judges.

## OVERVIEW

BOOCHEVER, Circuit Judge:

Craig Randolph Pearson appeals the district court's upward departure from the Sentencing Guidelines following his conviction on eight counts of bank robbery and

attempted bank robbery. Pearson contends that the district court's departure was impermissible; even if departure was permissible, the amount was unreasonable; and the departure violated his due process rights. We hold that the departure was permissible, but because we find the amount of departure unreasonable, we remand to the district court for resentencing. Any departure should be guided by analogy to the guidelines.

### FACTS

On November 22, 1988, Pearson pled guilty to eight counts of bank robbery and attempted bank robbery under 18 U.S.C. §§ 2113(a) and (d). Pearson admitted that he wrote a demand note for each robbery, and he believed that in each note he claimed to have a gun. He denied, however, that he actually had used or possessed a gun. The government struck any allegations that Pearson was armed from the indictment before Pearson entered his guilty plea.

The district court adopted the offense level computation in the presentence report, calculating Pearson's sentence as follows. Under the version of the Sentencing Guidelines then in effect, the base offense level for robbery was 18. United States Sentencing Commission, *Guidelines Manual* § 2B3.1(a) (hereinafter *Guidelines*).[1] The base offense level must then be increased according to the value of the loss. *Id.* at § 2B3.1(b)(1). Because each robbery involved a financial institution, the court treated the loss for each as at least $5,000, which increased the base offense level to 19. *Id.* at § 2B3.1(b)(1)(B).

The court then adjusted the offense level to encompass all the eight counts to which Pearson pled guilty. The guidelines determine the combined offense level by taking the offense level for the most serious count, and increasing it by five levels if the number of offense units is more than five. *Guidelines* § 3D1.4. Each of Pearson's eight offenses was equally serious and thus had the same offense level of 19. The district court added five levels, for a total of 24. Pearson then received a two-level reduction for accepting responsibility under *Guidelines* § 3E1.1(a), leaving his offense level at 22. The district court set his criminal history category at III, based on earlier drunk driving and hit and run convictions, and because Pearson was on probation when he committed the bank robberies.

Pearson's total offense level of 22 and his criminal history category of III resulted in a guideline range of 51 to 63 months. The presentence report recommended a sentence of 168 months (14 years), justifying the upward departure by noting the number of robberies Pearson admitted to and Pearson's claimed possession of a weapon. At sentencing, the district judge departed from the guideline range and sentenced Pearson to 120 months (ten years) imprisonment and five years supervised release. The judge stated:

> I'm going lower from what the probation officer recommended, and not because I think the probation officer is wrong, but because I'm in a way bound by my own history, and I had another case in which the defendant hadn't as many bank robberies, but it was the second or third time through the system, to him I gave 15 years. And this is [the] first time that this defendant has been charged with these crimes. So if I felt 15 was fair for the other fellow who—then 14 wouldn't be fair to this defendant. That's the only reason I'm doing it, not because I feel that the probation officer is right or wrong, any more than I'm right or wrong, because it's a very difficult thing.

He stated further that the reason for departure was explained in the presentence report. The report based its recommendation of departure on the number of offenses in light of the nature of the face-to-face confrontation with the victims, the threat of use of a firearm, and the possible

---

1. Unless indicated to the contrary, all references to the guidelines in this opinion are to *Guidelines* (Oct. 15, 1988). We note that the guideline for robbery has been amended since Pearson's sentence was imposed. *See Guidelines* Appendix C, ¶ 110 (Nov.1989).

harm to the public.[2] Although Pearson had been a suspect in a number of other bank robberies, the judge indicated that he took into consideration only the eight counts to which Pearson pled guilty.

Pearson does not challenge the district judge's calculation of his offense level or his criminal history category. He argues that the departure upward from the 51–63 month range to 120 months was improperly based on the number of offenses to which he pled guilty, a factor Pearson claims was already taken into account when the judge added five levels for his "more than five" offenses under *Guidelines* § 3D1.4. He also claims the departure violates due process.

## DISCUSSION

While the Sentencing Commission anticipated that district judges would not very often depart from the sentencing ranges resulting from the correct application of the guidelines, *Guidelines*, ch. 1, part A, § 4(b), departure is permissible if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or

to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). A judge who departs from the guidelines "must set forth the specific aspects ... of the charged offense that the district court believes have not been adequately represented in the recommended sentence." *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989)(per curiam); *see* 18 U.S.C. § 3553(c)(2).

*Standard of review*

We use a five-step process to review departures from the guideline range. *United States v. Lira–Barraza*, 897 F.2d 981, 983 (9th Cir.1990). We must consider

(1) whether the district judge adequately identified the "aggravating or mitigating circumstance" ...;

(2) whether the identified circumstance actually existed;

(3) whether the circumstance was adequately taken into consideration by the Sentencing Commission,

---

2. The portion of the presentence report referred to by the judge reads:

**PART F. FACTORS THAT MAY WARRANT DEPARTURE**

In calculating [sic] the offense level for the eight counts in this matter, an excess of units were produced in determining the combined offense level pursuant to section 3D1.4. Section 3D1.4 determines the increase in the offense level in correspondence to the total number of units produced in this calculation. Five levels were added to the offense level as five or more units were produced.

However, the commentary of section 3D1.4 indicates departure would be warranted in unusual cases where the additional offenses resulted in a total of significantly more than five units. Further, this section indicate [sic], "Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines." In considering the nature of the offenses in this matter, Bank Robberies, we believe eight units represents a significant excess when calculating the combined offense level. Bank Robbery is an offense which requires face-to-face confrontation between the offender and the victim and in these cases involved the threat of a firearm. Further, these robberies occurred in an area

to which the public had access, thus increasing the degree of possible harm. We believe that for these reasons the definition of "significant," as used in section 3D1.4, takes on greater meaning for offenses of this serious nature. In considering the information presented in this section, it appears the Court has grounds to depart upward from the suggessted [sic] guideline range.

. . . . .

A recommendation beyond the guideline range is suggested. As indicated previously, there appears [sic] to be adequate reasons for the Court to depart upward beyond the suggested guideline range when considering the facts presented in PART F. of this report. We do not believe the upper end of the suggested guideline range provides for an adequate total punishment for the counts of conviction. The defendant has admitted to robbing eight banks in San Diego County and is a prime suspect in at least 19 others. It is noted that of the eight counts, he robbed at least two banks on two separate occasions. Further, in Count One, the victim teller recognized him from a previous alleged bank robbery not included in the Superseding Indictment. Although not listed as a reason for departure, it appears the FBI investigation discovered certain information which leads one to believe that the eight counts considered for sentenc-

(4) if not, whether the circumstance should result in departure; and,

(5) whether the extent or degree of departure was unreasonable.

*Id.* We apply de novo review in the first and third steps and clearly erroneous review in the second step; we review steps four and five for an abuse of discretion. *Id.*, 897 F.2d at 983–86.

### Departure Analysis

█ The district judge clearly stated his reasons for departure by incorporating the presentence report, which identified the number of robberies as the specific aggravating circumstance. The presentence report also referred to the commentary to *Guidelines* § 3D1.4, which indicates that departure would be warranted in unusual cases where the additional offenses resulted in significantly more than five units. This satisfies the first of the *Lira–Barraza* steps for appellate review.

There is no factual dispute regarding the eight robberies Pearson committed. Step two thus is met.

Third, it is clear that the Commission did not consider the circumstance relied on for departure in setting the combined offense level. The commentary to *Guidelines* § 3D1.4 specifically provides: "Inasmuch as the maximum increase provided in the [combined offense level] guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units."

Fourth, we must determine whether the district court abused its discretion in determining that Pearson's eight robberies were "significantly more than 5 Units." The sheer number of offenses alone may determine whether the amount over five is significant. In this case, however, the district judge took more than mere numbers into account. The judge specifically indicated that he was considering only the eight offenses to which Pearson pled guilty, and adopted the following portion of the presentence report:

In considering the *nature* of the offenses in this matter, Bank Robberies,

we believe eight units represents a significant excess when calculating the combined offense level. Bank Robbery is an offense which requires face-to-face confrontation between the offender and the victim and in these cases involved the threat of a firearm. Further, these robberies occurred in an area to which the public had access, thus increasing the degree of possible harm. We believe that for these reasons the definition of "significant," as used in section 3D1.4, takes on greater meaning for offenses of this serious nature.

(Emphasis added.)

The district judge thus did not focus only upon the numerical difference between five and eight. He reasoned that because Pearson's offenses involved confrontation and the threat of a gun in a place open to the public, the significance of the additional offenses was great enough to justify departure.

The guideline commentary justifies departure if there are significantly more than five offenses. The district judge did not abuse his discretion in determining that the three additional robberies constituted significant criminal conduct in excess of five. They constitute a sixty percent increase. Also, considering the particular crimes involved and the circumstances of their commission, it properly can be said that Pearson's offenses were unusual. The robberies involved the threat of the use of a gun, and occurred in bank areas to which the public had access, enhancing the risk of harm to others. *See Guidelines* ch. 1, part A, § 4(b) (Sentencing courts should treat the guidelines "as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."); *United States v. Ryan*, 866 F.2d 604, 609–10 (3d Cir.1989) (case is unusual enough to warrant departure where Sentencing Commission failed to take into account unusual danger of drug, and where quantity, puri-

ing may not represent the total number of bank robberies this defendant committed.

ty, and packaging were exceptional); *United States v. Guerrero*, 863 F.2d 245, 250–51 (2d Cir.1988) (unusually large amount of drugs involved justified departure from maximum of 12 to 63 months). Here it was not an abuse of discretion for the district judge to depart from the guidelines.

■ Finally, in step five we must determine whether the amount of departure was reasonable. We initially consider the district judge's stated reasons for the direction and degree of departure. *Lira–Barraza*, 897 F.2d at 986. The judge stated "I'm in a way bound by my own history.... That's the only reason I'm doing it, not because I feel that the probation officer is right or wrong" in setting the amount of departure. He thus indicated that the departure was determined at least in part by his own sentencing history prior to the guidelines. This perpetuates the kind of sentencing disparity between individual judges that the guidelines were designed to avoid. *See Guidelines* ch. 1, part A, § 3 ("Congress sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders") (emphasis in original). It was inappropriate for the district judge to refer to his pre-guidelines sentencing habits in setting the amount of departure.

■ We also conclude that the amount of departure was unreasonable. The guidelines refer to several kinds of departures, including:

instances in which the guidelines provide specific guidance for departure, by analogy or by other numerical or non-numerical suggestions.... The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect

the suggestions, and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.

[Another] kind of departure will remain unguided. It may rest upon grounds referred to in Chapter 5 [Part K (Departures)], or on grounds not mentioned in the guidelines. While Chapter 5, [Part K] lists factors that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly unusual.

*Guidelines* ch. 1, pt. A, § 4(b); *see United States v. Nuno–Para*, 877 F.2d 1409, 1413 (9th Cir.1989) ("[t]he district court's discretion is further fettered by any analogy provided by the guidelines").

Guided by analogy, the approximate amount of departure for the two [3] excess offenses not considered in determining Pearson's combined offense level may be calculated by adding one offense level for the two uncounted offenses.[4] The total offense level thus rises from 22 to 23. The guidelines sentencing range for an offense level of 23 and criminal history category III is 57 to 71 months. *Guidelines* ch. 5, part A. The 120–month sentence imposed was significantly greater, 49 months more than the high end of the range.

When other courts have permitted substantial departures, the cases typically have been ill-suited to departure by analogy. *See United States v. Lopez–Escobar*, 884 F.2d 170, 173 (5th Cir.1989) (mere fact

---

**3.** The guidelines take into account only Pearson's first six offenses. *Guidelines* § 3D1.4 provides for an addition of five offense levels when the defendant has "more than 5" combined offense units. The sixth offense resulted in the addition of five offense levels; the seventh and eighth were not considered in the sentence prior to departure.

**4.** We note that "[t]he amount of the additional punishment declines as the number of addition-

al offenses increases." Introductory Commentary, *Guidelines* ch. 3, part D; *see* Commentary to *Guidelines* § 3D1.4 (goal is to "produce declining marginal punishment"). After three offenses, § 3D1.4 adds one offense level for four or five offense units, and after six offenses, no additional levels are specified. It would be reasonable to add no more than one offense level for Pearson's two excess offenses.

that a departure more than doubles the maximum guideline sentence is of no independent significance, finding departure from 2 to 5 years reasonable based on large number of illegal aliens transported); *United States v. Rodriguez*, 882 F.2d 1059, 1067–68 (6th Cir.1989) (departure from 37 to 72 months reasonable where court articulated several grounds for departure, one of which related to criminal history level), *cert. denied,* —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *United States v. Diaz–Villafane,* 874 F.2d 43, 50–52 (1st Cir.) (departure more than tripling maximum sentence from 33 to 120 months not "outside of the universe of acceptable punishments" where court articulated five separate grounds for departure), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Salazar–Villarreal,* 872 F.2d 121, 122–23 (5th Cir.1989) (upward departure from maximum 10-month guideline to 36 months reasonable, based on death and injury resulting from crime); *United States v. Roberson,* 872 F.2d 597, 602–03 (5th Cir.) (departure from maximum of 37 months to 120 months reasonable where defendant's conduct was "extreme"), *cert. denied,* —— U.S.——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

We do not imply that a departure by analogy always must be on a strict proportional basis to the guidelines sentence. Factors other than the number of offenses may be considered, such as those factors mentioned by the district judge—including the threat of use of a gun, and the commission of the robbery in an area occupied by people, thus increasing the likelihood of harm. There may be many other factors justifying results different from those derived by analogy. In this case, however, after considering the factors mentioned by the judge, we conclude that the sentence so greatly exceeds the amount suggested by analogy that the amount of departure is unreasonable.[5] The district judge thus abused his discretion in fixing the degree

5. We also do not suggest that a 120–month sentence could never be justified in this case, or that the district judge is absolutely precluded from imposing such a sentence on remand. We

of departure. *See Lira–Barraza,* 897 F.2d at 986.

*Due Process*

Pearson's argument that his sentence violated due process is based primarily on the use by the judge of his pre-guidelines practices. We have disposed of that argument on other grounds. We find no merit to Pearson's other contentions that his due process rights were violated.

### CONCLUSION

Although departure from the guidelines was permissible, the amount of departure was unreasonable. We remand to the district court for resentencing according to the standard set forth in this opinion.

hold only that, based on the legitimate factors mentioned by the district judge in his initial sentencing, 120 months is unreasonable.