951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian Peter DANIELS, Defendant-Appellant.
 Nos. 90-30415, 90-30432 and 90-30433.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 11, 1991.*
Decided Dec. 13, 1991.
 
 Before WALLACE, Chief Judge, HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Brian Peter Daniels appeals from the sentences imposed in related cases in which he pleaded guilty to conducting a continuing criminal enterprise (CCE) in violation of 21 U.S.C. §§ 848 and 853, and to conspiring to import marijuana, 21 U.S.C. § 963, and distribute some 42 tons of marijuana in violation of 21 U.S.C. § 846. He argues that the district court erred in departing upwards and in computing his CCE sentence under the Sentencing Guidelines, refusing a two-point reduction for acceptance of responsibility, and imposing fines without determining Daniels's ability to pay. We affirm.
 
 
 3
 * We apply the three-part test for departures set out in United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc).[1]
 
 
 4
 Daniels argues that the district court did not properly identify its reasons for departing under United States v. Wells, 878 F.2d 1232 (9th Cir.1989), and that he was erroneously sentenced under a base level of 39 instead of the base level of 32 set by the presentence report.
 
 
 5
 * The district court adopted the findings in the presentence report, as it was entitled to do. See United States v. Pearson, 911 F.2d 186, 189 (9th Cir.1990). The presentence report identified the extraordinary amount of marijuana involved, the scope of the enterprise, and the enormous profits made from the enterprise as factors warranting departure. The court added that Daniels, "unlike his codefendants, has amassed millions which are beyond the reach of the authorities." Unlike Wells, where the district court made only a conclusory statement explaining departure, these reasons are sufficiently specific to provide meaningful review.
 
 B
 
 6
 By stipulation of counsel and as calculated in the presentence report, the base offense level on the CCE count was 32.[2] Daniels's criminal history category was I. The applicable guideline range was 121 to 151 months. Accepting the presentence report's departure analysis, the district court concluded that the appropriate sentence would be that corresponding to offense level 39 and criminal history category I. That range is 262 to 327 months. The district court selected 300 months for the reasons stated in the presentence report, and because Daniels had amassed millions of dollars worth of property beyond the reach of authorities.
 
 
 7
 The presentence report arrived at an offense level of 39 as the appropriate point for departure by comparing the amount of drugs related to level 32 and to level 43 under § 2D1.5. The report reasoned that if level 43 were to apply, the amount of marijuana would have had to be 300,000 kilograms, whereas there were 195,048 kilograms, or roughly 65% of that, in this case. Interpolating, or taking 65% of the 11 point difference between a level 32 and level 43, the report came up with an offense level of 39.
 
 
 8
 Daniels first argues that "interpolation" cannot be a proper basis for departure in this case. He contends that the Guidelines only permit interpolation of specific offense characteristics and not base offense levels, see U.S.S.G. § 1A.4(b) (1987 version),[3] and that interpolating between § 848(a) CCEs and CCEs under § 848(b), which requires the defendant to have been a principal in the organization, is like arriving at a logical midpoint between "applies and oranges" because the two sections define different crimes. But the district court here did not interpolate between two offenses to arrive at a total offense level; instead, it interpolated by analogy, to gauge the proper extent of departure from the total offense level. This means of calculation was not unreasonable in light of the standards and policies of the guidelines. See, e.g., United States v. Carpenter, 914 F.2d 1131 (9th Cir.1990) (upward departure based on possession of weapon arrived at by logical extension of other enhancements).
 
 
 9
 Daniels also argues that the court could not consider departing on the basis of the amount of marijuana involved because the applicable guideline already considers the amount as a means of raising the base offense level. He contends that § 2D1.5 provides for an adjustment of base offense level to 43 if the overall weight of the marijuana involved in the offense is over 300,000 kilograms.
 
 
 10
 The version of § 2D1.5 in effect when Daniels committed his criminal conduct[4] consisted of three tiers, of which the lowest base offense level was for the first CCE conviction without limitation as to role or amount, U.S.S.G. § 2D1.5(a)(1), and the highest was for engaging in a continuing criminal enterprise as the principal administrator, leader or organizer if either the amount of drugs was over 300,000 kilograms or the principal received $10 million in gross receipts for any twelve-month period. U.S.S.G. § 2D1.5(a)(3). Subsection (a)(1) relates to 18 U.S.C. § 848(a), for which one does not need to be a principal and for which there is no minimum narcotic requirement, whereas (a)(3) parallels § 848(b), which applies to principals who distribute at least 300,000 kilograms. Daniels was convicted under § 848(a), and § 2D1.5(a)(1) is therefore the applicable guideline. It does not take quantity into consideration.
 
 
 11
 Subsequent amendments to § 2D1.5 indicate that the Sentencing Commission did not take drug amount into consideration in the 1987 version of subsection (a)(1). First, amendments effective on October 15, 1988, raised the base offense level for a CCE conviction to 36. The accompanying commentary stated that an upward departure would be warranted if the quantity of drugs involved "substantially exceeds that required for level 36 of the drug quantity table." At that time, for possession and other drug offenses under § 2D1.1, 10,000 kilograms of marijuana was the minimum for level 36. Daniels's 200,000 kilograms of marijuana represents twenty times that amount. Next, the Commission revised section 2D1.5 again so that, effective November 1, 1989, the base level for a CCE would be the greater of 38 or "4 plus the offense level from § 2D1.1 applicable to the underlying offense." Section 2D1.1 incorporates the Drug Quantity Table. Thus, the sentences for CCE convictions now correlate directly to the amount of narcotics involved if that amount is greater than that for the level 36 minimum (otherwise, base level would simply be 38 under section 2D1.5(a)(2)). The level 36 minimum for marijuana is 10,000 kilograms so that, if the new section 2D1.5 were in effect when Daniels committed his criminal conduct, he would have been subjected to a sliding scale for the amount of drugs involved in his enterprise.
 
 
 12
 Departure in this case is also consistent with other cases in which an upward departure was found warranted when the crime involved a large quantity of drugs and the offense guideline did not take drug quantity into account. See United States v. Bennett, 900 F.2d 204 (9th Cir.1990) (affirming departure based on large quantity of drugs involved in telephone count).[5]
 
 
 13
 Daniels's reliance on United States v. Barbontin, 907 F.2d 1494 (5th Cir.1990), is misplaced. There, the sentencing court departed upwards in a § 841(a) possession case in part because of the large amount of drugs involved. Id. at 1498-99. The Fifth Circuit refused to sanction the departure, indicating that the Drug Quantity Table's separation into degrees of culpability already treated drug quantity in the possession context. Id. at 1499. In CCE cases such as Daniels's, however, in which the defendant is not an administrator or leader of an enterprise dealing more than 300,000 kilograms, the 1987 Guidelines did not treat drug quantity using particular levels. Instead, just as for telephone counts in Bennett, the 1987 CCE guideline merely stated a flat level for the offense. Thus, Barbontin is distinguishable.
 
 
 14
 Daniels finally contends that by recommending an upward departure, the prosecution has somehow breached its plea agreement, thereby requiring us to order resentencing. This contention is without merit, because the government expressly reserved the right to seek an upward departure in the plea agreement.
 
 II
 
 15
 Daniels argues that the district court erred in two respects when it withheld a two-level reduction for acceptance of responsibility: it considered constitutionally protected conduct against Daniels, and it measured the evidence against a higher standard, akin to cooperation under § 5K1.1, than that called for by § 3E1.1.
 
 
 16
 * Daniels suggests that the presentence report in this case relied on his action in exercising his sixth amendment right to counsel and his fifth amendment right against self-incrimination. He analogizes to the conduct of the probation officer held improper in United States v. Watt, 910 F.2d 587 (9th Cir.1990). He points to the presentence report's recommendation of denial of a two-point offense-level reduction, which indicated that Daniels declined to discuss the circumstances of the offense on advice of counsel and which stated that, even though Daniels admitted importing marijuana, it was unknown whether he clearly demonstrated recognition and affirmative acceptance of personal responsibility. Unlike Watt, where the court relied on the fact that the defendant, before entry of his guilty plea, had not surrendered voluntarily to authorities or assisted in recovery of the fruits and instrumentalities of his crime, id. at 593, the court here relied on insufficient manifestation of accepting responsibility after the plea. Nothing said in the presentence report impermissibly treads on Daniels's fifth amendment privilege by not conferring credit on him for failing to divulge information or take action that could incriminate him. Nor does it penalize Daniels for following the advice of his lawyer; the report's reference to his failure to discuss the case is simply by way of explaining why, apart from the agreed statement of facts, the probation officer lacked information that Daniels had demonstrated an affirmative acceptance of responsibility.
 
 B
 
 17
 Daniels argues that the stipulated facts filed in connection with his plea establish recognition and acceptance of responsibility, and that his offer of assets to the government is consistent with recognition that he is responsible for the criminal activities for which he was convicted.
 
 
 18
 Acceptance of responsibility is a factual determination, and thus is reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990). The district court's denying a reduction was not without foundation. There was evidence that Daniels pleaded guilty to certain charges, stipulated to certain facts relating to marijuana importation, and said he would try to retrieve assets to turn over to the government. On the other hand, there was evidence that Daniels refused to make a statement of financial condition to the presentence officer and had not assisted significantly in recovering assets. Under these circumstances we defer to the district court's determination, which we cannot say was clearly wrong. U.S.S.G. § 3E1.1 cmt. 1; Gonzalez, 897 F.2d at 1019.
 
 
 19
 Daniels argues that the presentence report mistakenly applies the more stringent standard for substantial assistance to authorities, U.S.S.G. § 5K1.1, rather than the standard for acceptance of responsibility. The presentence report in no way refers to these standards, or to the kind of conduct that has to do with cooperation. Instead, it explicitly makes reference to § 3E1.1 and applies the proper standard for acceptance of responsibility.
 
 III
 
 20
 Daniels argues that the district court failed properly to consider his ability to pay a fine prior to imposing one in the amount of $6,250,000.00, contrary to U.S.S.G. § 5E4.2(d)(2) (1987 version), and made no specific finding on ability to pay, contrary to United States v. Seminole, 882 F.2d 441 (9th Cir.1989).
 
 
 21
 Daniels did not object to the $6,250,000 fine in his Objections to the Presentence Report and the Government Sentencing Memorandum, or at his sentencing hearing. We accordingly review for plain error. See United States v. Lopez-Cavasos, 915 F.2d 474, 479 (9th Cir.1990).
 
 
 22
 Section 5E4.2(c)(2)(C) (1987 version) authorizes the court to impose a fine on a defendant the maximum amount of which is "three times the estimated gain to the defendant." Daniels admitted to making $5 million in 1987 from marijuana trafficking and $3 million for an individual marijuana shipment. Thus the $6,250,000 fine imposed by the district court is well under the maximum allowed by the statute.
 
 
 23
 The district court adopted the findings in the presentence report as amended by the stipulation of the parties. Paragraph 101 of the presentence report found that "[t]he defendant has substantial assets and has the ability to pay a fine if his Thailand assets are liquidated." Those assets were worth $10 million. In the sentencing stipulation, Daniels waived an evidentiary hearing with respect to paragraph 101 of the presentence report. Thus, the district court did not plainly err in finding that Daniels owned $10 million in assets in Thailand and had the ability to pay a fine generally. Compare Seminole, 882 F.2d at 443 (requiring specific findings as to solvency where prosecution and defendant agreed defendant was indigent and where no facts supported defendant's solvency) with United States v. Quan-Guerra, 929 F.2d 1425, 1426-27 (9th Cir.1991) (appearing to require remand for specific findings only when "the record is silent as to the defendants earning capacity").
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This issue was briefed by reference to the five-step analysis adopted in United States v. Lira-Barraza, 897 F.2d 981 (9th Cir.1990). Since then, we reconsidered Lira-Barraza en banc. Although we have now adopted a three-step analysis, that difference has no effect on this case. Under the new approach, we review de novo whether the district court identified and based its departure on a circumstance not adequately taken into account by the Commission; we review for clear error factual findings supporting the existence of the identified circumstances; and we determine whether the extent of departure is unreasonable in light of the standards and policies in the Sentencing Reform Act and the Guidelines. Lira-Barraza, 942 F.2d at 746-47
 
 
 [2]
 The plea agreement provided that sentences on the other two cases were to be concurrent with the sentence imposed on the CCE conviction
 
 
 [3]
 Section 1A.4(b) explained "interpolation" under the guidelines as follows:
 A specific offense characteristic, for example, might require an increase of four levels for serious bodily injury but two levels for bodily injury. Rather than requiring a court to force middle instances into either the "serious" or the "simple" category, the guideline commentary suggests that the court may interpolate and select a midpoint increase of three levels.
 U.S.S.G. § 1A.4(b) (1987 version).
 
 
 [4]
 The 1987 version of § 2D1.5 provided:
 Continuing Criminal Enterprise
 (a) Base Offense Level:
 (1) 32, for the first conviction of engaging in a continuing criminal enterprise; or
 (2) 38, for the second or any subsequent conviction of engaging in a continuing criminal enterprise; or
 (3) 43, for engaging in a continuing criminal enterprise as the principal administrator, leader, or organizer, if either the amount of drugs involved was 30 times the minimum in the first paragraph (i.e., the text corresponding to Level 36) of the Drug Quantity Table or 300 times the minimum in the third paragraph (i.e., the text corresponding to Level 32), or the principal received $10 million in gross receipts for any twelve-month period.
 
 
 [5]
 In United States v. Martinez, 946 F.2d 100 (9th Cir.1991), we found improper an upward departure based on large drug quantity when the defendant was convicted of § 846 conspiracy to distribute and § 841(a)(1) possession with intent to distribute. The guidelines for these crimes make direct reference to the Drug Quantity Table, see U.S.S.G. § 2D1.1, and the amount of drugs involved in the Martinez case was higher than the highest amount listed in the Table at the time
 The Martinez court found that the Sentencing Commission had already considered drug quantity for amounts greater than the highest amount in the Table, first, because the § 2D1.1 Table considered drug quantity explicitly and, second, because the language in the Table accompanying the highest amount--"50 KG Cocaine or equivalent ... (or more of any of the above)"--clearly indicated that higher amounts should be included at the highest level. Martinez, 946 F.2d at 101-02.
 Daniels's case is distinguishable because the § 848(a)(1) CCE offense applicable to Daniels does not refer to the Drug Quantity Table, and because neither § 2D1.5(a)(1) (1987 version) nor § 848(a) mentions drug quantity.