**UNITED STATES of America, Appellee,**

v.

**Maurice B. CHASE, Jr.,
Defendant, Appellant.**

No. 89–1502.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided Jan. 29, 1990.

---

Charles P. McGinty, Federal Defender Office, Boston, Mass., for defendant, appellant.

S. Theodore Merritt, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for the U.S.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

On January 18, 1989, Maurice B. Chase, the defendant-appellant, was indicted for committing 14 bank robberies and one attempted bank robbery, all in violation of 18 U.S.C. § 2113(a). The defendant-appellant pled guilty to all 15 counts of the indictment on March 9, 1989 before the district court, and a sentencing hearing was held on May 10, 1989. Pursuant to a plea agreement the government recommended a sentence in the top third of the guideline range, which the court determined to be 57–71 months. In imposing its sentence, however, the district court departed upward from the guideline range, sentencing the defendant to a term of imprisonment of 120 months, followed by two years of supervised release. Defendant appeals this upward departure, contending that the district court erred in nearly doubling the recommended sentence solely on the basis of the multiplicity of bank robberies, when the Guidelines do not provide penalties for additional robberies beyond five.

*Facts*

The robberies and attempted robbery were committed during the period between June 3, 1988 and December 19, 1988. Defendant's *modus operandi* was essentially the same in each instance. He would enter the bank and stand in line with the rest of the customers. Upon reaching the front of the line, he would hold a note to the glass at the teller's window. The only note recovered read as follows: "This is a stick-up!! I have a *gun*. Do what I say and you will not get shot!!!" The tellers in the other banks which were robbed reported that the notes used in the other robberies were substantially identical to the note that was recovered.

The victim banks were selected at random. The defendant used stolen or abandoned cars as getaway vehicles. In each of the robberies the defendant received an amount between $1,000 and $14,000. On one occasion the defendant left the bank without receiving any money. The government did not contend that a weapon was used in any of the robberies, and there were no instances of violence inflicted on persons in the banks. Defendant's motive throughout was to obtain money to purchase cocaine for himself and his girlfriend, and he stated that all the proceeds of the robberies were used for this purpose. In many instances, the defendant was under the influence of cocaine during the perpetration of the offense.

After being apprehended and advised of his *Miranda* rights, the defendant confess-

ed to all but three of the bank robberies. Additional evidence that he was the perpetrator was available in the form of bank surveillance photographs depicting the defendant at the scene of each robbery. The defendant entered a plea of guilty to each of the 15 counts of the indictment.

Pursuant to the *United States Sentencing Commission Guidelines Manual* ("Manual") § 3D1.2(d) (rev. ed. 1988), which requires that each bank robbery be treated and scored separately, all of the robberies except one were assigned adjusted offense level scores of 19. Count Six was assigned an adjusted offense level score of 20.[1] The court then made the necessary multiple count adjustment pursuant to section 3D1.4 to determine a single offense level that encompassed the number of counts for which the defendant was convicted. This resulted in an increase of five units to a combined offense level of 25.[2] The defendant was then given a two-level decrease for acceptance of responsibility, resulting in a total offense level of 23. The court determined that defendant was in Category III of criminal history, resulting in a guideline range of between 57 to 71 months.

At the sentencing hearing, pursuant to a plea agreement, the government did not seek an upward departure but sought a sentence at the high end of the applicable guideline range. The defendant sought a sentence of 65 months. The court sentenced the defendant to 120 months, referring to the *Manual* commentary on section 3D1.4 at 3.17, which provides in pertinent part: "Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted

in a total significantly more than 5 Units." The court's order continued:

> Mr. Chase has pled guilty to fifteen separate bank robberies. I find that this is the unusual case where the additional offenses resulted in a total significantly more than five units.
>
> Accordingly, a departure upward from the Guidelines is warranted and was made herein.

### Analysis

█ *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989) outlines the standards of review applicable to departures from the Sentencing Guidelines.[3] First, we must consider the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. This review involves a question of law—whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure—and is subject to plenary review. Second, we must ask whether the circumstances, if conceptually proper, actually exist in the particular case. This is a factual question, and the trier's determinations may be set aside only for clear error. Finally, we must measure the direction and degree of departure against a standard of reasonableness. *Diaz–Villafane*, 874 F.2d at 49.

1. Whether the circumstances justify departure from the Guidelines

Under the Sentencing Reform Act, 18 U.S.C. § 3551 *et seq.*, a district court may depart from the Guideline range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sen-

---

1. Under Guideline § 2B3.1, each robbery received a base offense level of 18. Section 2B3.1(b)(1) requires treating a loss to a financial institution as at least $5,000, bringing the adjusted offense level for each robbery to 19. Count Six involved a financial loss to the bank of $13,997, which gave this count an adjusted offense level of 20 under § 2B3.1(b)(1)(C).

2. Although the defendant was convicted of 15 counts of bank robbery (15 possible units), the

multiple count adjustment procedure provides for a maximum increase of only 5 units. *See Manual*, § 3D1.4 at 3.16.

3. Two other First Circuit opinions that illuminate the standards of appellate review applied to upward departures from the Guidelines are *United States v. Wright*, 873 F.2d 437 (1st Cir. 1989) and *United States v. Aguilar–Pena*, 887 F.2d 347 (1st Cir.1989).

tence different from that described." 18 U.S.C. § 3553(b). Here, the large number of robberies committed by the defendant constitutes an aggravating circumstance of the type contemplated by section 3553(b). Indeed, the plain language of the commentary to the Guidelines, *Manual*, § 3D1.4 at 3.17, clearly contemplates upward departures for cases involving numerous counts of the same offense:

> Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of *significantly more than 5 Units*.

*Manual*, Commentary to § 3D1.4 (Determining the Combined Offense Level), at 3.17 (emphasis added).

 We find the instant case to be one in which the additional offenses (numbering nine) resulted in a total of significantly more than five units. Without question, the circumstance relied upon by the district court to justify departure from the Guidelines—the large additional number of bank robberies committed by defendant—is sufficiently "unusual" to justify a departure.

2. Whether the circumstances exist in this case

The finding that defendant committed the 15 offenses—which formed the basis for the district court's decision to depart from the sentencing guidelines—was based on defendant's plea of guilty to all 15 counts; consequently, there is no question as to its factual correctness.

3. Whether the direction and degree of the departure were reasonable

In *United States v. Diaz–Villafane*, 874 F.2d at 49–50, we said that the degree of departure is "essentially a judgment call" and that "[w]e will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure." We further stated that,

> In this context, reasonableness is determined with due regard for "the factors to be considered in imposing a sentence,"

generally, and the reasons for the imposition of the particular sentence, as stated by the district court ... 18 U.S.C. § 3742(d)(3).

*Id.* at 49. We went on to note,

> 18 U.S.C. § 3553(a) sets forth the factors to be considered in imposing sentence. They include the seriousness of the offense, deterrence, public protection, the indicated sentencing range under the Guidelines, policy statements of the Sentencing Commission, and avoidance of unwarranted disparities in sentencing.

*Id.* at 49 n. 6.

The upward departure here represented four additional years in prison for nine additional bank robbery convictions—a degree of departure that we cannot declare unreasonable in light of (1) the seriousness of the crime of bank robbery, (2) the need for concern that if the sentence for 15 robberies is no greater—or only slightly greater—than that for six, there will be little deterrent to the commission of robberies in excess of six, and (3) the language in the commentary to the Guidelines recognizing that departure is warranted where there have been significantly more than five additional offenses.

Defendant argues that no sentence can be reasonable where "the marginal punishment equals, and may exceed, the underlying punishment." Defendant quotes the Introductory Commentary to Part D (Multiple Counts) of Chapter 3 (Adjustments), which states that "the rules ... seek to provide *incremental* punishment for significant additional criminal conduct" and that "[t]he amount of the additional punishment *declines* as the number of additional offenses increases." Part D, Introductory Commentary at 3.9. (emphasis added by defendant). He also quotes the commentary in *Manual*, § 3D1.4 at 3.17, which articulates a goal of imposing "declining marginal punishments." He cites other segments of the Guidelines in which he says that the marginal punishment decreases rapidly as the frequency of the offending conduct escalates.[4]

---

4. Defendant cites larceny (§ 2B1.1), gun selling (§ 2K2.3), money laundering (§ 2S1.1), and bid-

rigging (§ 2R1.1). He fails to note, however, that each of these situations can be distin-

We see no inconsistency, however, between the instant upward departure from the Guidelines and the Sentencing Commission's model of "declining marginal punishments." Under the sentence imposed, the average additional time for each of the nine offenses beyond the original six is less than five and one-half months per offense. This is roughly equivalent to the additional punishment prescribed under Guidelines procedures for each of the first five additional robberies. We do not agree that the marginal punishment "equals or exceeds" the underlying punishment, as defendant contends. The Sentencing Commission cannot have intended to mandate a policy under which crime can actually pay once a specified number of offenses of a given type have been committed. While minds might differ as to what additional sentence the nine additional offenses deserved, we cannot say the district court acted outside the zone of reasonableness.

As we stated in *United States v. Diaz-Villafane*, 874 F.2d at 52, "we read the Guidelines as envisioning considerable discretion in departure decisions, at least at this early stage of their existence." (citing S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3235 (purpose of Guidelines "is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences")).

The decision of the district court is *affirmed*.

guished from the instant situation in that the declining marginal punishment is imposed for escalating amounts of money or guns involved in a single offense, not for repeated counts of the same offense.