UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony W. DAWSON, Defendant–Appellant.

No. 92–1934.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1992.

Decided July 2, 1993.

James M. Warden, Asst. U.S. Atty., Kathleen M. Sweeney (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Jack F. Crawford (argued), Indianapolis, IN, for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*

RIPPLE, Circuit Judge.

Anthony Dawson pleaded guilty to six counts of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of possession and use of a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Mr. Dawson had also committed numerous other uncharged robberies and had an extensive record of past criminal conduct. The district court departed upward from the otherwise applicable sentencing range. Mr. Dawson was sentenced to 360 months of imprisonment for the six bank robberies to which he pleaded guilty, an additional mandatory consecutive sentence of sixty months on the firearm count, five years of supervised release, and restitution in the amount of $17,319.00. Mr. Dawson appeals the district court's upward departure. After reviewing the sentencing record, we believe that the district court erred in its methodology and imposed a sentence on Mr. Dawson that contravenes the Sentencing Guidelines. Accordingly, we remand this case for resentencing.

## I

## BACKGROUND

### A. Facts

Mr. Dawson has a long and varied criminal history during which he has consistently committed theft offenses in order to finance his drug use. From April 25, 1991, to June 17, 1991, Mr. Dawson committed a series of bank robberies that encompassed three different states. He committed eight bank robberies in Indianapolis, Indiana, and he robbed three other banks in Ohio and Kentucky.[1] Mr. Dawson managed to elude police despite the fact that he did not wear a disguise when he robbed the banks, that he left identifiable fingerprints on the counter of one bank, and that at least once he signed a deposit slip with his own name and left it at one of the banks that he robbed.

Believing that Mr. Dawson was going to be killed eventually, his aunt convinced him to surrender to authorities. Early in the morning of June 25, 1991, Mr. Dawson gave himself up to the FBI. He confessed committing seventeen robberies: eleven bank robberies (which were federal crimes) and six other robberies (which were state crimes) that had occurred either in business establishments or on the streets of Indianapolis.

On July 11, 1991, Mr. Dawson was indicted on six counts of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and six counts of using or carrying a firearm during the commission of a crime of violence in violation of

---

* The Honorable Barbara B. Crabb, of the Western District of Wisconsin, is sitting by designation.

1. The FBI report listed Mr. Dawson's series of bank robberies as: (1) April 25, 1991, stole money by pretense from a Merchants National Bank in Indianapolis, Indiana; (2) May 24, 1991, robbed an Indiana National Bank in Indianapolis; (3) May 28, 1991, robbed a Merchants National Bank in Indianapolis; (4) May 30, 1991, robbed an Indiana National Bank in Indianapolis; (5) June 4, 1991, robbed an Indiana National Bank in Indianapolis; (6) June 5, 1991, robbed a Charter Oak Federal Savings Bank in Cincinnati, Ohio; (7) June 7, 1991, robbed a Central Trust Bank in Covington, Kentucky; (8) June 10, 1991, robbed a Citizens Federal Savings and Loan in Dayton, Ohio; (9) June 11, 1991, robbed a Merchants National Bank in Indianapolis; (10) June 14, 1991, robbed a Shelby Federal Savings Bank in Indianapolis; and (11) June 17, 1991, robbed a Merchants National Bank in Indianapolis. R. 20 at Attachment 1.

18 U.S.C. § 924(c). These counts were all based on bank robberies that had occurred in Indianapolis. Mr. Dawson initially gave notice to the government that he would use an insanity defense at trial. However, on January 31, 1992, Mr. Dawson pleaded guilty to all six counts of bank robbery and to one count of the firearm offense.

B. *District Court Proceedings*

On April 10, 1992, the district court conducted a sentencing hearing. The Probation Office drafted a presentence report (PSR) on Mr. Dawson and determined that he had an adjusted offense level of 28, while his extensive past criminal conduct placed him in the highest criminal history category, Category VI. Thus, the applicable sentencing range was 140–175 months' imprisonment. The Probation Office, however, recommended an upward departure because Mr. Dawson's criminal history inadequately reflected the seriousness of his past criminal conduct and the likelihood of recidivism. Specifically, the recommendation noted that Mr. Dawson had been charged with only six of the numerous bank robberies to which he had confessed. Moreover, the PSR stated that the sixth charged robbery was not taken into consideration under § 3D1.4 of the United States Sentencing Guidelines' multiple-count grouping provisions.[2] Mr. Dawson had also confessed to six state robberies upon which he had yet to be charged; he had been convicted previously of three state felonies that had been consolidated for sentencing and thus did not receive full consideration under the Guidelines; and he also had three prior convictions that were too old for inclusion under the Guidelines. Additionally, at the sentencing hearing, the government argued for an enhancement based on the alleged extreme psychological injury to several bank tellers who were victims of Mr. Dawson's trail of robberies.

At the sentencing hearing, Mr. Dawson restated his written objections to all of the recommendations for upward departure contained in the PSR, as well as the government's attempt to show that the bank tellers suffered from extreme psychological injury. Mr. Dawson contended that his prior criminal history was adequately taken into account by the provisions of the Sentencing Guidelines. He argued that a criminal history category of VI is such a serious designation that it did adequately reflect his past criminal conduct. Moreover, Mr. Dawson argued that neither the charged nor the uncharged robberies could serve to enhance his sentence because the multiple-count grouping provisions of the Sentencing Guidelines already contemplate the commission of multiple offenses and, therefore, no upward departure was justified.

The district court, however, agreed with the recommendation in the PSR that an upward departure was appropriate. The district court prefaced Mr. Dawson's sentencing hearing by stating that his criminal history category, as calculated under the Sentencing Guidelines, was inadequate. Tr. at 78. The court found that the calculated sentencing range did not fully reflect Mr. Dawson's past criminal conduct or his likelihood of recidivism. In its departure calculations, the court did not rely upon the six state robbery confessions, the three old convictions, or the alleged extreme psychological injury of the bank tellers. Instead, the court departed upward on the basis of the three prior state convictions that had been consolidated for sentencing, on the five uncharged federal bank robberies, and on the sixth charged bank robbery that allegedly was not addressed under § 3D1.4. In making the upward departure, the court specifically stated that

> there have been prior sentences that were not used in computing the criminal history

2. U.S.S.G. § 3D1.4 is the Guideline provision for determining the combined offense level for multiple counts. The section states in pertinent part: The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1½ | add 1 level |
| 2 | add 2 levels |
| 2½–3 | add 3 levels |
| 3½–5 | add 4 levels |
| More than 5 | add 5 levels. |

category with reference to the consolidated state counts, and there is prior similar adult criminal conduct not resulting in a criminal conviction that also warrant an upward departure.

Tr. at 78–79. Because Mr. Dawson already qualified for the highest criminal history category, Category VI, any upward departure based upon the inadequacy of the criminal history computation had to be calculated outside the sentencing table. See U.S.S.G. § 4A1.3 (stating that in certain egregious cases, "a decision above the guideline range for a defendant with a Category VI criminal history may be warranted").

With regard to the three prior offenses consolidated for sentencing, the district court noted that, had they not been .consolidated, six extra criminal history points would have been assessed against Mr. Dawson. The court departed upward by applying the six points to Mr. Dawson's criminal history. However, because he was already in the highest criminal history category, the court increased his sentencing range fifteen percent for each category that it departed upward beyond Category VI. See United States v. Schmude, 901 F.2d 555 (7th Cir.

1990).[3] The court found that this method resulted "in a two-level increase above the six." Tr. at 79.

The court further departed upward based on both the limitations of the multiple-count grouping provision in the Guidelines and the five uncharged bank robberies that Mr. Dawson had admitted committing. Although Mr. Dawson had pleaded guilty to six bank robberies, § 3D1.4, which increases the offense level for grouped offenses, only provides for an increase of five levels. Thus, the court determined that the sixth bank robbery had not been taken into account under the grouping provision. The court departed upward based on the sixth bank robbery count. Additionally, the court decided to depart upward again based on the five uncharged federal bank robberies. Tr. at 80. The court then apparently miscounted the robberies it was basing departure upon,[4] and instead of adding six units to the five already provided for under the grouping provision, it added the six additional units to the gross number (six) of charged robberies.[5] The court increased Mr. Dawson's offense level by twelve. This miscalculation resulted in a

---

3. In *United States v. Schmude*, 901 F.2d 555, 560 (7th Cir.1990), this court noted that upward departures must correspond with the Sentencing Guidelines' inherent framework. However, if a defendant has already reached the highest criminal history category, there is no other Guidelines procedure upon which a sentencing court can base an upward departure. *Id.* Thus; the degree of departure becomes solely a question of reasonableness. *Id.* *Schmude*, however, sets forth a method by which departures beyond Criminal History Category VI can be made in a principled and reasonable manner. *Schmude* noted that

> [f]or any given offense level, the Guidelines sentencing range increases roughly ten to fifteen percent from one Criminal History Category to the next higher category. In the case of a Category VI defendant, a sentencing judge can use this ten to fifteen percent increase to guide the departure. For example, if the grounds justifying a conclusion that Category VI is inadequate would normally have warranted a one category increase in the defendant's Criminal History Category, the sentencing judge should consider sentencing the defendant within a range ten to fifteen percent higher than the range corresponding to Criminal History Category VI.

*Id.; see also United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990) (stating that in approx-

imating higher criminal history categories, "[a] judge who runs out of criminal history levels may read down to find the next higher range").

4. *See infra* note 9 for further discussion of this miscalculation.

5. The court calculated the upward departure based upon the sixth charged bank robbery and the five uncharged bank robberies by stating that

> [b]ecause of the grouping arrangements, we had six bank robberies that were dropped to five.
>
> I will consider that additional bank robbery for purposes of an upward departure and add to that the additional federally investigated offenses about which Mr. Osborne testified and the three other federal offenses that were committed in other federal districts, one on June 5th; one on June 7th; and one on June 10th; the two about which Mr. Osborne testified that he investigated occurred on April 5th and June 14th. And I will take those six additional bank robberies ... and assign one unit to each ... [and add] those six units to the total number of units of six that are already provided for in paragraph 60 [of the presentence report]. The combined adjusted offense level becomes 37.

Tr. at 80. Thus, the court counted the sixth charged bank robbery twice.

combined adjusted offense level of 37. Mr. Dawson was, however, granted a two-level reduction for acceptance of responsibility. All of these calculations produced an offense level of 35.

Finally, the court reached a sentencing range of 360 months to life by calculating an offense level of 35 and by dropping down two additional levels in Criminal History Category VI by virtue of the fifteen percent extrapolation method proposed in *Schmude.*[6] The court sentenced Mr. Dawson to 360 months' incarceration on the charged bank robberies, a mandatory consecutive term of sixty months' incarceration for the firearm offense, restitution in the amount of $17,319 to be paid to the two victimized banks, and five years of supervised release.[7]

On appeal, Mr. Dawson contends that the district court erred in two ways. First, he argues that the district court erred when it departed upward by adding offense levels based on the five uncharged bank robberies to which he confessed. Second, he contends that an upward departure that raises the applicable sentencing range from 140–175 months to 360 months to life is unreasonable and is unsupported by the facts.

## II

### ANALYSIS

■ Pursuant to the jurisdiction granted this court under the Sentencing Reform Act, we review sentences for violations of law and for misapplications of the Sentencing Guidelines. *See* 18 U.S.C. § 3742(a) and (e). A sentence is to be imposed within the applicable guideline range "unless the [sentencing] court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). In reviewing a court's decision to depart upward, we review de novo

"whether a district court's stated grounds for departure may be relied on to justify the departure." *United States v. Willey,* 985 F.2d 1342, 1349 (7th Cir.1993).

Mr. Dawson concedes that the district court correctly departed upward based upon the three prior state offenses that had been consolidated for sentencing; he does not appeal the departure premised on those grounds. Moreover, he is satisfied that the district court appropriately used the *Schmude* analysis to extrapolate from the Guidelines and go beyond Criminal History Category VI. Mr. Dawson does, however, urge us to find that the district court departed upward on improper grounds by using the sixth charged bank robbery and the five uncharged bank robberies to elevate his adjusted offense level. Instead, Mr. Dawson contends, the upward departure should have been premised upon additions to his criminal history category.

A.  *Upward Departure by Adding the Sixth Charged Bank Robbery in the Multiple–Count Analysis*

Mr. Dawson argues that the sixth charged robbery should not have been the basis for any upward departure because the Commentary to the multiple-count grouping provision, § 3D1.4, states that "[i]nasmuch as the maximum increase provided in the guideline is five levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than five Units." § 3D1.4, Background Commentary. Mr. Dawson contends that six robberies is not significantly more than five; therefore, the sixth robbery is adequately addressed by the guideline and the district court should not have departed upward based on this count.

The government, on the other hand, argues that the sixth charged and the five uncharged bank robberies together constitute an amount significantly more than five

---

**6.** On the sentencing range chart, Mr. Dawson's sentence is found at the intersection of Criminal History Category VI and Offense Level 37.

**7.** This was actually the amended sentence. The district court corrected a technical error in the

original judgment order and neither party alleges any error by this action. Because we are remanding this case for resentencing, we shall not address the propriety of the district court's amendment.

units and, under § 3D1.4 were correctly used to depart upward. Otherwise, the government avers, "counting only five of the eleven federally based offenses covers less than one-half of the identified robberies." Appellee's Br. at 15.

The district court believed that the sixth charged bank robbery was not considered in the guideline computation under § 3D1.4. The court specifically stated that, "[b]ecause of the grouping arrangements, we had six bank robberies that were dropped to five." Tr. at 80. Thus, the court determined that an upward departure based upon the sixth bank robbery count was appropriate. We respectfully disagree.

■ Under the grouping provisions of the Guidelines, counts may be grouped together and a combined offense level will be calculated in accordance with § 3D1.4. Under that section, as more units are included, there is an arithmetic increase in offense levels.[8] As noted above, the Background Commentary to § 3D1.4 states that "[i]nasmuch as the maximum increase provided in the guidelines is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units." However, this language should not be construed to mean that § 3D1.4 does not take into account an offense level increase for a sixth offense unit. On the contrary, the offense level is increased by five when six units are included in the calculation. Section 3D1.4 provides that for 3½ to 5 units, the offense level is increased 4 levels; similarly, for more than 5 units, the offense level is increased by 5. Thus, the section does not ignore or discount a sixth charged offense. See United States v. Pearson, 911 F.2d 186, 190 (9th Cir.1990) (stating that under § 3D1.4, defendant's first six offenses were taken into account while the seventh and eighth were not considered in the guideline prior to departure); United States v. Chase, 894 F.2d 488, 491 (1st Cir.1990) (noting that § 3D1.4 encompasses six counts of bank robbery, but upward departure necessary where defendant had nine additional counts to which he had pleaded guilty).

The district court may have misconstrued this section because the amount of increase does not correspond exactly to the number of units considered. However, the Sentencing Commission created this disparity by providing that no increase in offense level is allowed for the first unit; increases in offense level begin only when one and a half units have been assessed. Thus, § 3D1.4 does take into account six charged offenses and the district court engaged in impermissible double-counting when it departed upward based upon Mr. Dawson's sixth charged bank robbery.

B. *Raising the Offense Level by Including Nonconvicted Criminal Conduct in the Multiple-Count Sentencing Calculation*

When he surrendered to the FBI, Mr. Dawson confessed to five additional federal bank robberies. After hearing testimony from an FBI agent regarding these additional crimes and after reviewing the PSR, the district court decided to depart upward from the Guidelines. The district court prefaced its upward departure by stating that "there is prior similar adult criminal conduct not resulting in a criminal conviction that also warrant an upward departure." Tr. at 79. The court then took these five robberies, gave a value of one unit to each of them, and added them to the units already calculated under the multiple-count grouping provision, § 3D1.4.[9] The district court did not explain why it chose to feed the five uncharged of-

---

8. *See supra* note 2 for the pertinent language of § 3D1.4.

9. As noted earlier in this opinion, the district court also engaged impermissibly in double-counting when it added these units to the units already calculated under § 3D1.4. Mr. Dawson had a total of six charged offenses. The presentence report thus determined that the total number of units under the provision was six, and this number translated into a five-level increase in his offense level. The court then departed upward by adding six units (five units representing the five uncharged offenses and one unit representing the sixth charged robbery that the court believed was not taken into account in the multiple-grouping provision) to the total number of six units already calculated. This constituted double-counting. The sixth charged robbery was already included in the six units noted in the presentence report.

fenses back into the multiple-count grouping provision instead of departing upward in the criminal history category.[10] This method of upward departure raised Mr. Dawson's offense level significantly.

Mr. Dawson believes that the court should not have departed upward by counting the five uncharged federal bank robberies in the multiple-count grouping provision, effectively increasing his offense level one for one with the uncharged offenses rather than elevating his criminal history. Mr. Dawson argues that § 3D1.4 may only be used for crimes for which a defendant has been convicted; it cannot be used to depart upward from the Guidelines' sentencing range on the basis of unconvicted offenses. Mr. Dawson relies on the prefatory language in the Introductory Commentary to the Multiple Counts part of the Sentencing Guidelines. The Commentary states that "[t]his Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." U.S.S.G. Section 3, Part D–Multiple Counts, Introductory Commentary. Moreover, had the district court used these additional crimes to depart upward in his criminal history category, Mr. Dawson claims that the court should have applied the *Schmude* analysis to extrapolate beyond Category VI as it did for the consolidated state crimes. Appellant's Br. at 12.

The government contends, however, that the multiple-counts section of the Sentencing Guidelines does not specifically prohibit consideration of unconvicted criminal offenses. The government argues that the application of § 3D1.4 is not restricted to offenses of conviction. The government contends that any contrary interpretation would eviscerate

§ 4A1.3(e) which allows upward departure if the criminal history category does not adequately take into account prior similar adult criminal conduct not resulting in a criminal conviction.

■ The government's argument misses the focal point of Mr. Dawson's appeal. Mr. Dawson is not arguing that unconvicted conduct can never be the basis for an upward departure; on the contrary, Mr. Dawson contends that the district court could have used his five additional robberies to depart upward in his criminal history category. Mr. Dawson argues only that in these circumstances an upward departure in his offense level based upon § 3D1.4 is improper. We agree.

Mr. Dawson's offense level should not have been raised by the inclusion of unconvicted offenses in the multiple-count grouping provision. The government argues that in *United ed States v. Chase*, 894 F.2d 488 (1st Cir. 1990), the court approved of an offense level elevation based upon nine additional robberies excluded from consideration under § 3D1.4. *Chase* is easily distinguishable from the situation that confronts this court. In *Chase*, fifteen counts of bank robbery were included in the indictment and the defendant pleaded guilty to all fifteen. Thus, the sentencing court appropriately included those counts in the § 3D1.4 analysis. By contrast, Mr. Dawson merely confessed to committing five other robberies; he was never charged with the offenses and he never pleaded guilty to them. Had Mr. Dawson stipulated to commission of the five additional robberies in his guilty plea, our decision would be different.[11] However, Mr. Daw-

---

10. In Chapter Four of the Sentencing Guidelines regarding criminal history, § 4A1.3 specifically states that if reliable information concerning "prior similar adult criminal conduct not resulting in a criminal conviction" indicates that the "criminal history category does not adequately reflect the seriousness of defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," then the court may depart upward.

11. U.S.S.G. § 1B1.2(c) states that "[a] conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated

as if the defendant had been convicted of additional count(s) charging those offense(s)." Moreover, the Commentary to the section notes that in the case of a stipulation to the commission of additional offense(s), the guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated. For example, if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery.
U.S.S.G. § 1B1.2, Application Note 4; *see United States v. Eske*, 925 F.2d 205, 207 (7th Cir.1991)

son's guilty plea contained no stipulations regarding the uncharged robberies.

It is certainly true that some unconvicted conduct may be used to elevate a defendant's offense level. Under § 1B1.3(a)(2), offense conduct and adjustments to the offense level are determined "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...." We have interpreted this section to mean

> that when the Guidelines provide tables that cumulate the amount sold or stolen, any acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction" should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts.

*United States v. White*, 888 F.2d 490, 497 (7th Cir.1989) (quoting U.S.S.G. § 1B1.3(a)(2)). The cross-reference to the multiple-count grouping provision, therefore, is designed to encompass only particular offenses of a character for which the multiple-count rules would require grouping. These are acts for which the Guidelines, for the most part, base an offense level on quantity. *See United States v. Atterson*, 926 F.2d 649, 660 (7th Cir.) (stating that "when the Guidelines provide tables that cumulate the amount sold or stolen," acts that are part of the same course of conduct as the conviction are to be included in the calculation of the offense level, without reference to conviction) (citing *White*, 888 F.2d at 497), *cert. denied sub nom. Laurelez v. United States*, —— U.S. ——, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991); *see also* U.S.S.G. § 1B1.3, Background.[12] As Chief Judge Breyer of the First Circuit has noted, other crimes for which sentencing is not based on fungible quantities and for which a defendant has not been convicted, such as murder or bank robbery, are not included in the calculation of the offense level "unless the government separately charges and obtains conviction for these acts." *United States v. Blanco*, 888 F.2d 907, 911 (1st Cir.1989) (noting with approval the decision in *White*); *see also* § 3D1.2(d) (listing offenses that are excluded from grouping, such as robbery).

In sum, the district court here apparently deemed Mr. Dawson's five uncharged bank robberies as demonstrating the inadequacy of Mr. Dawson's criminal history category.[13] However, instead of departing upward by elevating further the criminal history category, the district court departed upward in offense levels. While offense level adjustments may be made under § 1B1.3 for certain types of offenses, this circuit's decision in *White*, confirmed by the First Circuit's decision in *Blanco*, establishes that use of this approach for bank robbery offenses is not contemplated by the Guidelines. Thus, the district court could not have premised its upward departure on this methodology.[14]

■ Finally, we note that neither the district court nor the government suggests that,

---

(stating that where defendant had stipulated as part of his plea agreement to the commission of two additional robberies, those offenses were to be treated as offenses of conviction and included in the offense level calculation). This section also may serve to trigger application of the multiple-count provisions.

**12.** Moreover, we must note that as Mr. Dawson has pointed out, the prefatory comments to the multiple-count provisions of the Sentencing Guidelines state that "[t]his Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is *convicted.*" § 3, Part D–Multiple Counts, Introductory Commentary (emphasis added). This principle is echoed in the Commentary to § 1B1.3, which states that while the multiple-counts provision applies to multiple counts of

conviction, the scope of § 1B1.3(a)(2) is not limited to counts upon which a defendant has been convicted. U.S.S.G. § 1B1.3, Application Note 2.

**13.** *See supra* text at 5.

**14.** *See United States v. DeFelippis*, 950 F.2d 444, 448 (7th Cir.1991) (noting with disapproval an increase in offense level for reasons related to criminal history); *United States v. Paccione*, 949 F.2d 1183, 1205 (2d Cir.1991) (stating that uncharged environmental offenses could not be used to increase offense levels under the multiple-count rules where indictment had not charged defendants with violations of federal environmental laws), *cert. denied*, —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992).

on this record, the sentence calculation can be justified as an upward departure based on U.S.S.G. § 5K2.0 (Policy Statement). This section provides for upward departure when an aggravating circumstance exists "relating to the manner, effect, or other characteristics of the offense" of a kind not contemplated by the guideline for the offense of conviction. *United States v. Uccio,* 940 F.2d 753, 759 (2d Cir.1991). However, the uncharged misconduct that constitutes the aggravating circumstance must be related to the offense of conviction. By its plain wording, § 5K2.0 is limited to consideration of acts that, though not shown by prior sentencing patterns to be "empirically important in relation to the particular offense [of conviction] ... may [nonetheless] infrequently occur in connection with a particular crime...." U.S.S.G. Ch. 1, pt. A(4)(b) at 6 (1991) (Policy Statement). It is also important to note that the Commission carefully specified the different ways in which misconduct not resulting in conviction could be taken into account in determining punishment. The Commission has identified the sort of uncharged conduct that ought to result in an offense level adjustment. Thus, only infrequently will there be circumstances in which offense level upward departures under § 5K2.0 will be appropriate. *Id.* This arrangement reflects, as Chief Judge Breyer pointed out in *Blanco,* a carefully tuned compromise between "charge offense" sentencing and "real offense" sentencing. 888 F.2d at 911.

We do not want to preclude prematurely the district court's consideration of § 5K2.0 on remand. Nevertheless, we emphasize that, in order to justify the use of such a methodology, the district court must first find that enhancement of the criminal history category is not appropriate. The district court must also conclude that the uncharged offenses are related to the offenses of conviction. *See United States v. Uccio,* 917 F.2d

80, 86 (2d Cir.1990).[15] Furthermore, if the district court decides to depart in this fashion, it must do so within the context of the guidelines. As Judge Kearse has noted:

> [S]entencing judges [must] measure the extent of [§ 5K2.0] departures by reference to the penalties that would have been provided by the Guidelines if the misconduct at issue had resulted in a federal conviction, in order that "an act that need be proven only by a preponderance of evidence, ... [not] result in more punishment than would be called for if the act had been proven beyond a reasonable doubt and had resulted in conviction."

*Uccio,* 940 F.2d at 759–60 (quoting *United States v. Kim,* 896 F.2d 678, 684 (2d Cir. 1990)).

## C. *Remand for Resentencing*

The district court erred in its methodology and we cannot be certain that these errors were harmless. The Supreme Court has stated that in these circumstances, remand for resentencing is necessary:

> [T]he party challenging the sentence on appeal, although it bears the initial burden of showing that the district court relied upon an invalid factor at sentencing, does not have the additional burden of proving that the invalid factor was determinative in the sentencing decision. Rather, once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed.

*Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992); *see also United States v. Mount,* 966 F.2d 262, 265 (7th Cir.1992) (quoting

**15.** In *United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990), the court noted, albeit in dictum, that there may be circumstances "where a defendant commits a series of bank robberies so close together in time that it would be artificial to consider their 'prior' acts for purposes of section 4A1.3 just because the defendant pled to the last in the series...." This dictum was based on a previous edition of the Guidelines and it is also important to note that the court stated that "[t]he relationship that justifies [a § 5K2.0] departure [in offense level] ... must be more than temporal...." *Id. Kim* also relied on *United States v. Coe,* 891 F.2d 405, 409–10 (2d Cir.1989). In *Coe,* however, the defendant had stipulated to the other three bank robberies. 891 F.2d at 408. *See supra* note 11 and accompanying text.

*Williams* and stating that remand is appropriate unless error was harmless).

If the district court had not erred in its methodology, it may have reached a different sentence. In coming to this conclusion, we note that a sentencing court has latitude within the applicable sentencing range in which to identify an appropriate term of incarceration. Thus, we cannot state with certainty that had the district court not erred, it would have sentenced Mr. Dawson to the same term of imprisonment.

### Conclusion

For the foregoing reasons, we remand this case to the district court for resentencing in accordance with this opinion.

REMANDED FOR RESENTENCING.

CRABB, Chief District Judge, concurring.

I agree that the district court erred in ruling that defendant's sixth bank robbery had not been "considered" under the Sentencing Guidelines when § 3D1.4 provides explicitly that five levels are to be added for "more than 5" *units* of offenses. (Section 3D1.4 reflects a declining punishment scheme: 4 levels are added for 3½ to 5 units; 3 levels are added for 2½ to 3, etc.). I write separately, however, because I disagree with what I understand to be the majority's conclusion that a sentencing court should not use § 5K2.0 for upward departure in a case like this unless the court finds first that enhancement of the defendant's criminal history is not appropriate. To the contrary, I think § 5K2.0 *is* available and that a sentencing court could look to § 3D1.4 for guidance in calculating a reasonable upward departure under § 5K2.0.

Section 5K2.0 is a policy statement on grounds for departure. It incorporates the intent of 18 U.S.C. § 3553(b) that sentencing courts may impose sentences outside the ranges established by the sentencing guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." The majority suggests that the use of § 5K2.0 is not appropriate in this

case because the aggravating circumstance is not related to the offense of conviction. In my opinion, the number of times a person commits the same offense is a factor closely related to the underlying offense. *See United States v. Chase,* 894 F.2d 488, 491 (1st Cir.1990) (large number of robberies committed by defendant is aggravating circumstance of type contemplated in 18 U.S.C. § 3553(b)). Section 5K2.0 contemplates departure even where a factor has been taken into account if the "factor is present to a degree substantially in excess of that which ordinarily is involved in the offense."

A review of the guidelines shows that the Sentencing Commission did not take into consideration the kind of crime spree perpetrated by this defendant. Section 3D1.4 makes no provision for 17 armed robberies: the table provides for adding only one level for any number "more than 5." The commission acknowledges that a court would have to depart; it notes explicitly that a departure may be warranted "in the unusual case where the additional offenses resulted in a total significantly more than 5 Units." *See, e.g., United States v. Chase,* 894 F.2d 488 (proper to depart upward using § 3D1.4 as guide where defendant committed 15 bank robberies).

The majority objects to using § 3D1.4 to make an *offense level adjustment* using conduct to which the defendant has not pleaded, and adds that the additional robberies are not the sort of uncharged conduct that would result in an offense level adjustment, because the Sentencing Commission treats armed robberies and other crimes of violence as separate offenses and does not group them with other relevant conduct as it does crimes involving money or drugs. I have no quarrel with either of these propositions. I simply do not agree that a sentencing court would be making an offense level adjustment if it used § 3D1.4 as a *guide* to structuring an upward departure, once it has determined that a departure is proper. Then, § 3D1.4 would be an apt source of guidance for dealing with numerous contemporaneous offenses such as the additional armed robberies at issue in this case. The manner in which the commission weighs such offenses offers sen-

tencing courts useful guidance in determining how to depart once the decision has been made to do so.

My reading of *United States v. Schmude*, 901 F.2d 555 (7th Cir.1990), is that this court approved the extrapolation of criminal history categories as one way of fashioning an upward departure but that it did not rule out every other approach. Indeed, this court said that "the question of degree of departure is solely one of reasonableness," to be afforded a deferential standard of review, *id.* at 560, and added that reasonableness implies an effort "to fashion the degree of departure to correspond to the number and the nature of the factors which warrant departure." *Id.*

The majority implies that reference to the offense table in § 3D1.4 for calculating upward departures would work to the detriment of the defendant. In fact, if done properly, it may have the opposite effect. According to U.S.S.G. Part D, Introductory Commentary, the table in § 3D1.4 is designed to produce incremental punishment for significant additional criminal conduct, with the amount of additional punishment declining as the number of crimes increases. (This is why the table assigns a three level increase for 2½ to 3 units of offense; a four level increase for 3½ to 5 units of offense; and only five levels for more than 5.) A court calculating an upward departure should not depart upward the equivalent of one entire offense level for each additional offense but should try to conform its departure to the declining punishment scheme in the table. Under this scheme, five additional offenses could translate reasonably into a two level upward departure. Were the district court to use this approach and consider only the additional federal robberies, the proper sentence would be in the range of 210–262 months. Starting with the offense level of 28 calculated by the probation office and a criminal history category VI, the court would add the equivalent of two additional criminal history categories for defendant's inadequate criminal history and the equivalent of two offense levels for the aggravating circumstance of the five additional federal bank robberies that were not taken into consideration by the Sentencing Commission.

Alternatively, the district court could use the methodology approved in *Schmude*, 901 F.2d 555, which is based on inadequacy of criminal history, § 4A1.3. *Schmude* contemplates that once a court has determined that an upward departure is warranted, the court will assess additional criminal history categories for the factors justifying departure. If the defendant is already in the highest category, then the court will extrapolate a criminal history category. Because each increase in a category represents roughly a ten to fifteen percent increase in the sentencing range, the sentencing court can depart upward to the range that corresponds to the hypothetical category it has selected.

It would be premature to say whether it would be reasonable for the district court to assess defendant one criminal history category increase for each of the five additional federal bank robberies to which he did not plead.[1] If the court did make such an assessment, defendant might be facing a maximum guideline sentence of 292–365 months. His adjusted criminal history category would be the equivalent of a category XIII, after starting with his original category of VI and adding the two-category increase for the consolidated state court sentences and a five-category increase for the federal bank robberies. At least in theory, defendant could be worse off under the *Schmude* methodology. However, it is arguable that it would be a violation of the spirit of the declining punishment policy of the guidelines to apply that methodology on a one-category increase for each crime basis in a situation like this where the court is dealing with closely related crimes.

---

1. It is arguable that assessing defendant one criminal history category increase for each federal bank robbery is not reasonable, given the incremental punishing approach followed throughout the Sentencing Guidelines. Not only is this true of § 3D1.4; it is reflected as well in § 4A1.1(f) (criminal history). Under § 4A1.1(f), a sentencing court is limited to 3 points when adding points for prior sentences resulting from a conviction of a crime of violence that did not receive points under other sections of § 4A1.1 because the sentence was considered related to another one resulting from a conviction of a crime of violence.

468

In summary, I agree with the majority that this case must be remanded to the district court for resentencing, although I disagree with the implication that the district court cannot depart upward under § 5K2.0 unless it first determines that enhancement of criminal history is inappropriate. Also, I believe it would be proper for the district court to look to § 3D1.4 for guidance in structuring a reasonable upward departure for this defendant, taking into consideration the declining punishment scheme reflected in that section.