36 F.3d 1099
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Anthony DAWSON, Defendant/Appellant.
 No. 93-3275.
 United States Court of Appeals, Seventh Circuit.
 Argued June 14, 1994.
Decided Sept. 30, 1994.
 
 Before ESCHBACH, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 The district court sentenced Anthony Wayne Dawson to 360 months of imprisonment for six bank robberies to which he pleaded guilty, and an additional mandatory consecutive sentence of sixty months for his use of a firearm in the commission of the robberies. 18 U.S.C. Secs. 2113(a) and (d), and 924(c). Dawson appealed the district court's upward departure and this court remanded, see United States v. Dawson, 1 F.3d 457 (7th Cir.1993). On remand, the district court employed a different methodology and imposed the identical sentence. Dawson appeals a second time. He concedes that justifiable grounds for an upward departure exist but contends that the method and degree of departure are unreasonable. We disagree with the appellant's argument and affirm.
 
 Factual Background
 
 2
 "From April 25, 1991, to June 17, 1991, Mr. Dawson committed a series of bank robberies that encompassed three different states. He committed eight bank robberies in Indianapolis, Indiana, and he robbed three other banks in Ohio and Kentucky." Dawson, 1 F.3d at 458-59 (footnote omitted). "On June 25, 1991, Mr. Dawson gave himself up to the FBI. He confessed committing seventeen robberies: eleven bank robberies (which were federal crimes) and six other robberies (which were state crimes) that had occurred either in business establishments or on the streets of Indianapolis." Id.
 
 Initial Sentencing--April 10, 1992
 
 3
 In its presentence report (PSR), the Probation Office determined that Dawson had an adjusted offense level of 28 and a criminal history category of VI. Thus, the applicable sentencing range was 140-175 months' imprisonment. The probation office, however, recommended an upward departure because Dawson had been charged with only six of the numerous bank robberies to which he had confessed. First, the PSR recommended departure based on the fact that "the sixth charged robbery was not taken into consideration under Sec. 3D1.4 of the United States Sentencing Guidelines' multiple-count grouping provisions."[1] Dawson, 1 F.3d at 459. Second, the PSR recommended upward departure based on the numerous robberies to which Dawson confessed but had not been charged. Third, the PSR noted that Dawson "had been convicted previously of three state felonies that had been consolidated for sentencing and thus did not receive full consideration under the Guidelines." Dawson, 1 F.3d at 459. Finally, the PSR noted that Dawson had three prior convictions that were too old for inclusion under the Guidelines. In total, with upward departure, the PSR recommended a sentence of 280 months' imprisonment.
 
 
 4
 The district court agreed with the Probation Office that an upward departure was warranted. The district court noted that had the three prior offenses not been consolidated for sentencing, six extra criminal history points would have been assessed against Dawson. However, because Dawson was already in the highest criminal history category and the court could not apply six points, the court increased Dawson's sentencing range fifteen percent for each category that it departed upward beyond Category VI. 1 F.3d at 460 ( citing United States v. Schmude, 901 F.2d 555 (7th Cir.1990)). This resulted "in a two-level increase above the six." 1 F.3d at 460 (citing Tr. at 79). Next, the district court departed upward based on the sixth bank robbery count and the five uncharged federal bank robberies of which there was sufficient evidence. The court took the five robberies, gave a value of one unit to each, and added them to the units already calculated under the multiple-count grouping provision, Sec. 3D1.4. However, instead of adding six units to the five already provided for under Sec. 3D1.4, the court added six additional units to the "gross number (six) of charged robberies." Id. Thus, the court increased Dawson's offense level by twelve resulting in an adjusted offense level of 37. This offense level was decreased by two points for acceptance of responsibility. Lastly, the district court reached a sentencing range of 360 months to life by, starting at offense level 35, "dropp[ing] down two additional levels in Criminal History Category VI by virtue of the fifteen percent extrapolation method proposed in Schmude." 1 F.3d at 461.
 
 Errors in Initial Sentencing
 
 5
 On appeal, this court found two errors. First, this court held that Sec. 3D1.4 does not disregard a sixth charged offense. 1 F.3d at 462. Thus, the district court "engaged in impermissible double-counting when it departed upward based upon Mr. Dawson's sixth charged bank robbery." Id. Second, this court held that Dawson's offense level should not have been raised by the inclusion of unconvicted offenses in the multiple-count grouping provisions. 1 F.3d at 463. Had Dawson stipulated to commission of the five additional robberies in his guilty plea, this conclusion would be different. Additionally, this court noted that the district court impermissibly double-counted when it added five units, one for each of the five unconvicted bank robberies, to the units already calculated under Sec. 3D1.4.[2]
 
 Second Sentencing--September 8, 1992
 
 6
 On remand, the district court again found Dawson's offense level to be 28[3] and criminal history category to be VI. The court again found this underrepresentative of his criminal history. Departing upward, the district court gave Dawson three extra criminal history points (under Sec. 4A1.1(a)) for each of the two prior state offenses that had been consolidated with a third for sentencing and fifteen extra criminal history points for the five uncharged federal bank robberies. The court then added the total extra points to equal twenty-one and correlated this to a hypothetical criminal history category of XIII. Applying Schmude, the court read seven levels down the sentencing table for criminal history category VI. This resulted an offense level of 35 and a range of 292 to 365 months. The district court imposed a sentence of 360 months, plus the mandatory consecutive five-year term for the Sec. 924(c) charge, resulting in a total sentence of 420 months' imprisonment.
 
 Analysis
 
 7
 Only the degree of departure and the methodology employed by the district court are at issue. The court's decision to depart upward, reviewed de novo, see Dawson, 1 F.3d at 461, is not at issue. The degree of departure is reviewed for "reasonableness" and will be overturned only for an abuse of discretion. Schmude, 901 F.2d at 559.
 
 
 8
 Section 4A1.3 of the Guidelines allows for an upward departure where the criminal history category does not adequately reflect the seriousness of the defendant's past crimes, conduct or the likelihood that the defendant will commit other crimes. In making such an upward departure, the district court must refer to the Guideline range for the higher, and more appropriate, criminal history category to determine which category most accurately reflects the defendant's actual criminal history. United States v. Ferra, 900 F.2d 1057, 1062 (7th Cir.1990); accord, United States v. Miller, 874 F.2d 466, 470 (7th Cir.1989). However, where the defendant is already at the highest criminal history category, VI, a problem arises because although the sentencing grid progresses vertically to an offense level of 43, the grid only traverses horizontally to a criminal history category of VI. See Sentencing Table, U.S.S.G. Manual; cf. Sec. 4A1.3 (Policy Statement) ("Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.")
 
 
 9
 In Schmude, this court proffered a "reasonable" method for extrapolating outside the grid in these circumstances. The court reasoned that since each horizontal increase in criminal history category from I to VI (for any given offense level) results in a ten to fifteen percent increase in sentencing range, a "reasonable" degree of departure for each hypothetical category above VI would be an increase of ten to fifteen percent. 901 F.2d at 560. A look at the table in the other direction, vertical, reveals that for any given criminal history category, each successive offense level is ten to fifteen percent higher than the previous. Thus, as the district court noted, see Tr. 2 at 8, there is no difference between sentencing Dawson at criminal history category VI and offense level 35 (first sentencing) and at hypothetical criminal history category XIII and offense level 28 (second sentencing). In either case, the range prior to departure for criminal history category VI and offense level 28 of 140 to 175 months is increased ten to fifteen percent seven times.
 
 
 10
 Dawson argues that the Schmude approach of 10 to 15% provides a reasonable means for upward extrapolation only at criminal history categories lower than his. He urges this court to hold the Schmude formula unreasonable when applied to very high criminal history categories, such as XIII. The district court regarded the Schmude formula as binding. See Tr. 2 at 19. The district court was not bound to follow the Schmude formula. See Schmude, 901 F.2d at 560. So long as the degree of departure is reasonable in light of the particular factors of the case, we will affirm the sentence. Id. Therefore, the decision of the district court to apply Schmude is not unreasonable. A strict application of the Schmude formula is per se reasonable. See United States v. Ruffin, 997 F.2d 343, 346 (7th Cir.1993); United States v. Glas, 957 F.2d 497, 498-99 (7th Cir.1992); United States v. Molina, 952 F.2d 514, 522 (7th Cir.1992).
 
 
 11
 For the reasons stated herein, we affirm the ruling of the district court.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Section 3D1.4 provides:
 The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:
 Number of Units Increase in Offense Level
 
 
 [1]
 none
 
 
 [1]
 5 add 1 level
 
 
 [2]
 add 2 levels
 
 
 [2]
 5-3 add 3 levels
 
 
 [3]
 5-5 add 4 levels
 More than 5 add 5 levels
 U.S.S.G. Sec. 3D1.4.
 
 
 [2]
 The court explained: "Mr. Dawson had a total of six uncharged offenses. The presentence report thus determined that the total number of units under the provision was six, and this number translated into a five-level increase in his offense level. The court then departed upward by adding six units (five units representing the five uncharged offenses and one unit representing the sixth charged robbery that the court believed was not taken into account in the multiple-grouping provision) to the total number of six units already calculated. This constituted double-counting. The sixth charged robbery was already included in the six units noted in the presentence report." 1 F.3d at 462 n. 9
 
 
 [3]
 Base offense level 20 (Sec. 2B3.1(a)), plus 2 levels for property taken from a federally insured financial institution (Sec. 2B3.1(b)(1)), plus 3 levels for displaying a dangerous weapon (Sec. 2B3.1(b)(2)(C)), plus 5 levels for the multiple count adjustment (Sec. 3D1.4), minus 2 levels for acceptance of responsibility (Sec. 3E1.1(a))