107 F.3d 874
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Daniel SHAW, Defendant-Appellant.
 No. 95-3892.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 10, 1997.
Decided Feb. 24, 1997.
 
 Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Robert Daniel Shaw has brought this appeal to challenge several aspects of the sentence he received for committing a number of bank robberies. A jury found him guilty on five counts claiming violations of 18 U.S.C. § 2113(a), one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), but it failed to reach a verdict on two additional charges (one more for bank robbery, and one for using and carrying a firearm in connection with a bank robbery). After hearing oral argument, we affirmed the sentence from the bench. This order explains our reasoning in more detail.
 
 
 2
 The background facts pertinent to this appeal can be summarized briefly. On January 10, 1995, Shaw was charged in a criminal complaint for the December 3, 1994, robbery of a Citibank branch bank in Chicago. At the time, Shaw also faced an arrest warrant and motion to revoke probation for an earlier sentence before Judge George Lindberg. When he was arrested and interviewed by FBI agents, he admitted his part in the December 1994 robbery, as well as several other bank robberies. He also consented to a search of his car, which resulted in the discovery of a gun. The government then moved on January 18, 1995, to dismiss the complaint without prejudice, which the district court did two days later. By that time, Shaw was being detained in connection with his probation revocation proceeding.
 
 
 3
 Shaw was not finished with the criminal justice system, however. On January 19, 1995, Shaw appeared before Judge Lindberg on the government's filing of a rule to show cause why Shaw's probation should not be revoked. At the show cause hearing, the government told the court that it intended to place Shaw in a line-up. Shortly thereafter, he received a grand jury subpoena to appear in a line-up and to provide major case prints (i.e. a full set of finger and handprints). Shaw refused to cooperate. At a January 24, 1995, hearing before Judge Charles Korcoras, the government informed the court that thirty bank tellers were ready to view Shaw in a line-up, but that defense counsel had stated that (on his instructions) Shaw would not comply. Some of the tellers worked at banks that Shaw had robbed, but others worked at different banks. Counsel was concerned, therefore, that the government was planning to use the line-up to investigate robberies at those other banks rather than restricting itself to the banks Shaw was already accused of robbing. The district court held Shaw in contempt and ordered him to be held until he complied with the order. On January 31, 1995, the government withdrew its motion to show cause relating to Shaw's violation of probation.
 
 
 4
 On February 15, 1995, the government filed a motion requesting an order from the court permitting FBI agents to escort Shaw to the line-up and to restrain him physically if he resisted. At a hearing on that motion, Shaw again refused to comply, and the motion was continued. Ultimately, the court never ruled on the motion, and Shaw never participated in the line-up. His contempt was eventually terminated on the date of his sentencing. In the end, he was incarcerated until his sentencing date, but he did not receive credit on his sentence for time served.
 
 
 5
 Shaw was eventually indicted on six counts of bank robbery (Counts 1, 2, 3, 4, 6, and 7) one for using and carrying a firearm during the commission of a bank robbery (Count 5), and one for being a felon in possession of a firearm (Count 8). He pleaded not guilty, went to trial before a jury, and was convicted on everything except one of the bank robbery counts (Count 4) and Count 5. At the December 5, 1995, sentencing hearing, the district court found that a two-level enhancement for obstruction of justice (USSG § 3C1.1) was warranted on the bank robbery convictions based on Shaw's refusal to participate in the line-up. The court rejected Shaw's argument that he was entitled to a two-level reduction for acceptance of responsibility (USSG § 3E1.1) based on his offer to plead guilty to two of the bank robbery counts before trial. Counting the value of the money stolen in each robbery, the court found the following adjusted offense levels: Count 1, level 24; Count 2, level 22; Count 3, level 26; Count 6, level 26; Count 7, level 24; and Count 8, level 20. Following the rules for multiple convictions spelled out in USSG § 3D1.4, the court determined that five levels had to be added to the highest offense level, 26, which produced a final adjusted offense level of 31. With his uncontested Criminal History category III, this led to a sentencing range of 135 to 168 months. The court sentenced him to 156 months of confinement and ordered him to pay $5,000 in restitution.
 
 
 6
 On appeal, Shaw raises three principal issues: (1) whether the district court correctly added five levels to his base offense for multiple convictions, (2) whether the court erred in applying the two-level enhancement for obstruction of justice, and (3) whether the court erred in rejecting the two-level reduction for acceptance of responsibility. The first of these is the most straightforward. Under USSG § 3D1.4, the court must calculate a combined offense level by taking the highest offense level and increasing it by the amount indicated in a table, which sets forth the number of "units" that can be added for multiple convictions. Step One is normally to decide whether individual convictions must be grouped together under USSG § 3D1.2, because units depend on the number of groups, not the number of individual convictions. However, bank robberies are not eligible for grouping, which means that each of Shaw's convictions counted as a separate group. See, e.g., United States v. Dawson, 1 F.3d 457, 462-63 (7th Cir.1993). Next, the group with the highest offense level is counted as one unit, and each additional group that is equally serious or from one to four levels less serious is counted as an additional unit. Each group that is five to eight levels less serious than the group with the highest level is counted as one-half unit. Finally, § 3D1.4 caps the number of additional levels that can result from this process at five.
 
 
 7
 Shaw does not contest the individual findings of offense levels, apart from his general claim that the obstruction and acceptance of responsibility issues should have been handled differently. The calculation is therefore straightforward:
 
 
 8
 

Count 1 .............. 24 (one unit)
Count 2 .............. 22 (one unit)
Count 3 .............. 26 (one unit)
Count 6 .............. 26 (one unit)
Count 7 .............. 24 (one unit)
Count 8 .............. 20 (one-half unit)
TOTAL UNITS: 5 1/2
 
 
 9
 The district judge correctly recognized this, even though its statement at sentencing truncated the explanation somewhat: "So there is one unit on Counts 3, 6 and one unit on Counts 1, 7, one unit on Count 2, and a half unit on Count 8 for five and a half." Shaw argues that the court somehow grouped together Counts 3 and 6, and Counts 1 and 7, and failed to realize that 1 k 1 k 1 k 1/2 = 3 1/2. This is a strained interpretation, at best; we think it obvious that the court meant one each on Counts 3, 6, 1, and 7, and thus properly added up the units. Indeed, any other result would have been plainly wrong under the language of USSG § 3D1.4.
 
 
 10
 Shaw's theory on the obstruction of justice enhancement rests principally on the fact that he was following the advice of his lawyer when he refused to participate in the line-up and to provide the prints, and that the lawyer in turn was concerned that the government was improperly trying to use the line-up to investigate unrelated offenses. He also argues that his action could not have impeded the investigation of the offenses with which he was charged, because the subpoena did not specifically mention them. (Shaw also complains in his revised brief on appeal that the jury should not have been informed that he refused to appear in the line-up, but this does not relate to any of his sentencing challenges, and he has not attacked the conviction. We therefore do not consider this point further.) Finally, he notes that the Guidelines do not specifically mention refusing to appear in a line-up as the type of conduct that warrants enhancement.
 
 
 11
 None of these arguments justifies a deliberate refusal to follow a direct order of the court. If Shaw had wanted to challenge the validity of the line-up, he could have appeared under protest and preserved his right to appeal the appropriateness of the court's order. Otherwise, the rule is clear that orders of the court must be obeyed. See United States v. Monem, --- F.3d ----, 1997 WL 9252 at * 3-4 (7th Cir. Jan. 13, 1997) (affirming obstruction enhancement where defendant failed to appear before grand jury); United States v. Austin, 54 F.3d 394, 403-04 (7th Cir.1995) (affirming obstruction enhancement where defendant defied subpoena to turn over documents). Furthermore, once the time for sentencing arrived, the court was entitled to view Shaw's contumacious behavior as something that obstructed the government's investigation of the crimes for which he had been convicted. A line-up is a valid tool for the prosecutor to use in building its case against a criminal defendant, and Shaw's actions obstructed the government's efforts to do so. Application Note 3 to USSG § 3C1.1 states at the end that the enhancement applies to "any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct." Without witness identifications at the line-up and without the major case prints, Shaw might have argued successfully to the jury that the government had the wrong man for some or all of the robberies. Again, we have no trouble concluding that disobedience of a valid subpoena easily qualifies as obstruction of justice for purposes of USSG § 3C1.1.
 
 
 12
 Finally, Shaw lists as one of his issues for review the claim that the district court erred as a matter of law when it refused to give him a two-level downward adjustment for acceptance of responsibility. He does not develop this argument in his revised brief on appeal, and we therefore could treat it as waived. See United States v. Reddrick, 90 F.3d 1276, 1282 (7th Cir.1996). In any event, a defendant is eligible for this adjustment only if he admits or does not falsely deny all "relevant conduct that the court [has] determined to be true." Application Note 1(a), USSG § 3E1.1. Shaw admitted only that he robbed the Citibank branch; the government was put to its proof on all remaining counts. The district court knew that it had the discretion to make this adjustment, but it chose not to do so. Under the circumstances, therefore, there is nothing for us to review. See United States v. Cunningham, 103 F.3d 596 (7th Cir.1996) (affirming district court's refusal to depart downward where defendant pleaded guilty to only one of four charged bank robberies).
 
 
 13
 We AFFIRM the sentence in all respects.